UNITED STATES v. CRUCIBLE STEEL CO. OF AMERICA.

(Circuit Court of Appeals, Second Circuit.   March 2, 1905.)

No. 127.

CUSTOMS DUTIES—CLASSIFICATION—STEEL STRIPS COLD-ROLLED, SMOOTHED ONLY.

The provision in paragraph 141, Tariff Act July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 162 [U. S. Comp. St. 1901, p. 1640], for steel strips brought to a "perfected surface finish ·or polish better than the grade of cold-rolled, smoothed only," does not require that such "better" finish or polish must be produced by some process other than cold-rolling; but it does not include certain steel strips of a thickness of $13/1000$ of one inch, which have been subjected to no other process than the cold-rolling (with incidental annealing, pickling, etc.) necessary to produce so small a gauge; for, a precisely similar provision in the tariff act of 1890 having received the same construction, it is presumed that Congress, by re-^nacting it, intended it to have the same effect, especially in the- absence of proof of a general, well-recognized meaning for the words quoted that would include such articles.

Appeal from the Circuit Court of the United States for the Southern District of New York.

The cause comes here upon appeal from a decision of the Circuit Court, Southern District of New York, reversing a decision of the Board of General Appraisers, which sustained the collector.in assessing certain imported merchandise for duty.   The opinion of the Circuit Judge will be found in 132 Fed. 269.

Chas. D. Baker, for appellant.

W. J. Gibson, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

· LACOMBE, Circuit Judge.   The merchandise is strip steel, which has been cold-rolled, from four to five inches wide, $13/1000$ of an inch thick, and from 200 to 250 feet in length, valued above three cents and not above four cents per pound, and which, after being tempered by the importer, is used for making car-seat springs. The importation was under the tariff act of July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 160 [U. S. Comp. St. 1901, p. 1638], which contains the following paragraphs:

"Par. 133. Sheets of iron or steel, polished, planished or glanced, by whatever name designated two cents per pound: provided, that plates or sheets of iron or steel by whatever name designated, other than the polished, planished, or glanced provided for, which have been pickled or cleaned by acid, or by any other material or process, or which are cold-rolled, smoothed only, not polished, shall pay two-tenths of one cent per pound more than the corresponding gauges of common or black sheet iron or steel."

It is conceded by both sides that the merchandise is not within this section because it is not "sheets of steel," steel strips or strips of steel being commercially a different article.

"Par. 135. Steel ingots, cogged ingots, blooms and slabs by whatever process made, * * * sheets and plates and steel in all forms and shapes

not specially provided for in this act, * *. * valued above 3 cents per pound, and not above 4 cents per pound, 1²/₁₀ cents per pound."

Both sides concede that the merchandise is covered by this paragraph.

"Par. 141. * * * On all strips, plates, or sheets of iron or steel of whatever shape, other than the polished, planished, or glanced sheet-iron or sheet-steel hereinbefore provided for, which are cold-rolled, cold-hammered, blued, brightened, tempered, or polished by any process to such perfected surface finish, or polish better than the grade of cold-rolled, smoothed only, hereinbefore provided for, there shall be paid one cent per pound in addition to the rates provided in this act upon plates, strips, or sheets of iron or steel of common or black finish." 30 Stat. 162 [U. S. Comp. St. 1901, p. 1640].

The sole question in the case is whether the importations should pay the additional duty required by paragraph 141. To decide this question it is necessary, first, to construe the paragraph, and then to apply its provisions to the facts. The Circuit Judge interpreted the paragraph as requiring that the "better" surface finish or polish must be one produced by some process other than cold-rolling. We are unable to concur in this conclusion. It does not seem to be warranted by the language used, which provides that when the steel strips—by cold-rolling, by cold-hammering, by bluing, by brightening, by tempering, or by polishing by any process—are brought to such perfected surface finish or polish as is better than the grade specified in the section they shall pay the additional duty. This seems to be the natural construction. It is strictly grammatical, it is simple and sensible, it calls for no fine-drawn distinctions, it leads to no absurdity. Moreover, when it is adopted much of the ingenious argument which has been presented by both sides becomes immaterial.

The strips in question have not been subjected to any process other than cold-rolling. They have, it is true, been pickled—put in lime bath and annealed, it may be more than once; but the evidence shows that these manipulations are always steps in the process of cold-rolling to so small a gauge as this. Cold-rolling, however, affects the surface. Cold-rolled steel has a better or poorer surface, according to the number of times it has gone through the cold-rolls. The strips in question have been through the rolls several times to secure the required thinness, and undoubtedly are, as the witnesses call it, "whiter" or brighter than strips which have not been through the cold-rolls so often. The point to be determined is whether such betterment of the surface has reached a stage where the strip is to be classed as above the standard fixed by Congress as "cold-rolled, smoothed only."

What is that standard? For a reply one naturally turns, first, to the trade witnesses to ascertain the commercial meaning of the words. But no solution of the question is to be found there. The evidence before the Board of General Appraisers abundantly sustains their finding that there is no trade understanding which includes "cold-rolled, smoothed only"; and, so far as steel strips are concerned, there is nothing in the testimony taken in the Circuit Court to modify this finding. The phrase in paragraph 141 is "bet-

ter than the grade of cold-rolled, smoothed only, hereinbefore provided for." No prior provision is made as to steel strips; the reference is evidently to paragraph 133, which deals with sheets of steel. That section is awkwardly phrased. It first provides a rate for sheets "polished, planished, or glanced." Polishing is a process of improving the surface by the use of emery and buffing wheels, and planishing or glancing is apparently the same process carried out a little more elaborately. It then provides that "sheets * * * other than polished, * * * which are cold-rolled, smoothed only, not polished," shall pay a certain other rate. If the word "polished" is used with the same meaning in both parts of this sentence, the expression is tautological. We should hesitate to hold on the bare authority of this single phrase that Congress meant to declare that the steel sheets which are to pay the other rate of duty are such only as have not been subjected to the emery wheels, however bright and finished their surface might become by repeated passes through the cold-rolls, accompanied with acid treatments, lime baths, and annealing. Certainly the untrained eye, scrutinizing the exhibits in this case, can see little difference in finish between the surface of steel which has been thus repeatedly cold-rolled, pickled, and annealed and that which has been polished. Relying on the reference in paragraph 141 to paragraph 133, by the use of the phrase "hereinbefore provided for," the government in the Circuit Court introduced some illustrative samples of sheet steel. Of these, one (A) had been subjected to one or two passes on the cold-rolls; a second (B) to three passes and one annealing; a third (C) to three or more passes and two annealings; no "pickling" had been employed in any case to remove the scale. It was sought to be established that steel thus surfaced was what was commercially known as "cold-rolled, smoothed only"; but the testimony to that effect is unsatisfactory. The first witness testified as to A that its commercial designation was "American Bessemer, single pass"; that different manufacturers sometimes give it a different name; that it would be considered "a cold-rolled, single pass, annealed, smoothed"; as to B, that it would be designated "sheet steel, cold-rolled, smooth"; as to C, that its general name in the trade was "black, double annealed, cold-rolled, smoothed sheet steel." The second witness testified that all three samples have two names in trade—"cold-rolled sheet" and "cold-rolled sheet, smoothed"—which are used interchangeably. This evidence is hardly sufficient to establish a general well-recognized meaning for the phrase "cold-rolled, smoothed only."

The case is a difficult one. On the one side it might be said that when a hot-rolled rod—such as illustrative Exhibit A 10998 H—has been passed once through cold-rolls, it may fairly be described as smoothed. But, on the other hand, the word "smooth" is relative, and there are roughnesses and irregularities of surface in that exhibit greater than are apparent even in those (A, B, C) the government refers to as the standard. Under these circumstances, it would seem that a more satisfactory solution of the question can be found by reference to the tariff history of this provision for addi-

tional duty. It is not found in the Revised Statutes. Its first appearance is in the tariff of 1883, c. 121, Schedule C, 22 Stat. 499. Paragraph 177 of that act provides for additional duty on "steel strips, * * * cold-rolled, cold-hammered, or polished in any way in addition to the ordinary process of hot-rolling or hammering." About this language there could be no possible obscurity. In the tariff of 1890 we find the phrase now under discussion, "strips * * * of steel * * * which are cold-rolled, cold-hammered, blued, brightened, tempered, or polished by any process to such perfected surface finish, or polish better than the grade of cold-rolled, smooth only." This provision manifestly contemplates that there is some grade of surface finish which is the dividing line between two groups of articles, and it became the duty of the customs authorities to ascertain what that grade was, and to regulate their assessment of duties thereby. During the entire period from the passage of the act of 1890 until the passage of the next tariff act (1894) the grade thus adopted was one which relegated articles such as the present importation to the group whose surface finish was not better than the grade. In the tariff act of 1894 all provision for the additional duty was omitted. When the present tariff act was under consideration Congress was again asked to lay additional duties on steel strips, etc., which had a better surface finish than some named grade. Congress did lay such additional duty, relatively to a grade which it defined in precisely the same language as that used seven years before. The substitution of "smoothed" for "smooth" is immaterial. It is fair to assume that when it thus enacted Congress fully understood what dividing grade had been adopted by the customs authorities under the earlier act, and by the use of the same language intended to provide that the same grade should be the criterion for determining in which group future importations should be classified for duty purposes.

The decision of the Circuit Court is affirmed.