UNITED STATES v. KUTTROFF, PICKHARDT & CO.

(Circuit Court, S. D. New York. June 14, 1906.)

No. 3.651.

1. CUSTOMS DUTIES—CLASSIFICATION—BROMOFLUORESCIC ACID.

Bromofluorescic acid is dutiable as a coal tar color or dye under Tariff Act July 24, 1897, c. 11, § 1, Schedule A, par. 15, 30 Stat. 152 [U. S. Comp. St. 1901, p. 1627].

2. SAME—COLOR OR DYE.

An article which contains all the essential elements and determining characteristics of a color or dye, needing only to have its coloring properties rendered accessible by dropping it into water containing an alkali, is a color or dye within the meaning of Tariff Act July 24, 1897, c. 11, § 1, Schedule A, par. 15, 30 Stat. 152 [U. S. Comp. St. 1901, p. 1627].

3. SAME—CONSTRUCTION—CONGRESSIONAL INTENT—CUSTOMS PRACTICE.

Where customs authorities have for many years consistently classified an article under the same provision found in successive tariff acts, it may be assumed that Congress, by constantly repeating such provision, understood what the practice had been and gave some weight to it.

On Application for Review of a Decision of the Board of United States General Appraisers.

For decision below, see G. A. 5,766, T. D. 25,523, in which the Board of General Appraisers reversed the assessment of duty by the collector of customs at the port of New York.

Charles Duane Baker, Asst. U. S. Atty.

Curie, Smith & Maxwell (W. Wickham Smith, of counsel), for importers.

PLATT, District Judge. The merchandise in suit has for a long time been commonly known as bromofluorescic acid.

Paragraph 15 of the act of July 24, 1897, c. 11, § 1, Schedule A, 30 Stat. 152 [U. S. Comp. St. 1901, p. 1627] is as follows:

"15. Coal-tar dyes or colors, not specially provided for in this act, thirty per centum ad valorem; all other products or preparations of coal tar, not colors or dyes and not medicinal, not specially provided for in this Act, twenty per centum ad valorem."

The collector, under that paragraph, assessed duty at thirty per centum ad valorem. The importers protested, and the Board of General Appraisers, upon the testimony of one witness, found that it was "a chemical compound; a coal-tar preparation not a color or dye; not medicinal, and that it is an acid used as a material in combination with other substances in the manufacture of coal-tar colors and dyes." Upon these facts, the board sustained the protests, and placed the merchandise, under paragraph 15, at 20 per centum ad valorem. The government asked for a review, and much testimony has been taken in court on both sides. The merchandise in question is conceded to be a product of coal tar, not medicinal, and not provided for in the tariff act outside of paragraph 15. A single question then confronts us, and that is whether or not it is a color or dye.

The testimony before the court is voluminous, and the contention pro and con has been vigorously conducted. As far back as the tariff act of 1883, merchandise like that in suit has been imported, and since January 11, 1887, customs authorities have consistently and continuously insisted upon its classification as a' coal-tar color, under provisions which were substantially the same as in the present act. For many years the importer was engaged in an attempt to get it upon the free list as an acid, but it was treated by the Treasury Department as a coal-tar color, and was so maintained. Now, finding that there is no chance for the free list, an attempt is made to classify it as a coal-tar preparation not a color.

When we are looking to find what Congress meant by constantly repeating similar provisions in successive acts, we must give some weight to the Department's action, as hereinbefore described. We may assume, as was done in the Crucible Steel Case, 137 Fed. 381, 69 C. C. A. 576, that Congress understood the dividing line which had been adopted by the customs authorities in regard to this particular class of merchandise.

As to commercial designation, there does not appear to have been any uniform, long-continued practice. With the trade it seems to have gone largely as "bromo," and some thought it ought to be called a color, and others thought not. Such views were rather judicial than commercial. It was certainly sold in its imported condition to color

houses to be used in the manufacture of lakes, with recipes for its treatment attached thereto. Fortified then, by the departmental construction, and with little. if any, help from the trade, we come back again to the main question, is it or is it not a color or dye? The importer says that it lacks just one treatment, which seems to me to be the very shadow of a shade of a treatment, before it becomes practically a color or dye. He says that as imported, it is no more a color or dye than dough, before it is baked, is bread, and that any other theory rests upon the veriest splitting of hairs.

Let us look for a moment at the other theory. At one stage of the chemical developments from coal tar we reach fluorescein, which is concededly a color. By adding bromine we get the merchandise in suit. It contains all the essential elements and determining characteristics of a color or dye. It not only does not need, but will not endure, anything added to it or taken from it to make it a practical color or dye. Nothing is to be done, except to treat it in a purely incidental way. It is inherently and substantially a color or dye, largely deterred from immediate use by a binding acid. Drop it into water which has been treated with common soda, and its bonds will be at once loosened, and its coloring properties will be rendered accessible, without any other possible change, chemical or otherwise. To say that it is not a color or dye, and that Congress knew that it was not when it made paragraph 15 law, is merely a verbal matter. It is slightly soluble at the start, and if it be held that because its solubility must be increased by an alkali, it is not a color until that has been done, then a large number of generally recognized coal-tar colors will go under the ban, because they also must be loosened by an alkali.

The decision of the Board of General Appraisers must be reversed, and the merchandise classified as a "coal-tar color or dye."